# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MOHAMED HISHAM ELTAYEB,<br>individually and on behalf of similarly<br>situated persons,<br><br>  *Plaintiff*,<br><br>v.<br><br>DELI MANAGEMENT, INC. d/b/a "Jason's<br>Deli,"<br><br>  *Defendant*. | §§§§§§§§§§§§§ | CIVIL ACTION NO.  4:20-CV-00385<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Notice to Potential Plaintiffs and for Conditional Certification (Dkt. #21).  Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises from the employment relationship between Defendant and its delivery drivers.  Defendant operates multiple Jason's Deli stores and employs drivers to deliver food items to customers.  These delivery drivers perform their job functions using their own vehicle.  Delivery drivers are then reimbursed pursuant to a method employed by Defendant.

Plaintiff brought this suit under the Fair Labor Standards Act ("FLSA") to recover allegedly unpaid minimum wages.  Plaintiff claims that Defendant uses a flawed method to determine reimbursement rates.  Plaintiff further claims that the method employed by Defendant provides an unreasonably low rate beneath any reasonable approximation of the expenses incurred

by the drivers. As a result of Defendant's method, the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks.

On November 18, 2020, Plaintiff filed the present motion (Dkt. #21). On December 2, 2020, Defendant filed its response (Dkt. #22). On December 14, 2020, Plaintiff filed his reply (Dkt. #26).

## LEGAL STANDARD

The FLSA gives employees the right to bring an action on behalf of themselves, as well as "other employees similarly situated." 29 U.S.C. § 216(b). "Under 216(b), district courts have the discretionary power to conditionally certify collective actions and authorize notice to potential class members." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011). The Fifth Circuit has not specifically addressed the meaning of "similarly situated" in this context. However, this Court has adopted the approach taken in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987) because "[t]he *Lusardi* two-stage approach is the prevailing standard among federal courts is the standard most frequently used by this court." *See De La Rosa v. J&GK Prop., LLC*, No. 4:19-cv-00126, 2019 WL 7067130 (E.D. Tex. 2019) (citing *Trice*, 826 F. Supp. 2d at 994 (citations omitted)).

Under *Lusardi*, "certification for a collective action under § 216(b) is divided into two stages: (1) the notice stage; and (2) the merits stage." *Trice*, 826 F. Supp. 2d at 994. "At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Because the Court has minimal evidence before it at this stage, "the determination is made using a fairly lenient standard requiring

nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan." *Trice*, 826 F. Supp. 2d at 995. "Notice is appropriate if the court concludes that there is 'some factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged [policy or practice].'" *Allen v. McWane, Inc.*, No. 2:06-cv-158 (TJW), 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). "If the first step [of the *Lusardi* approach] is satisfied, the court conditionally certifies a class; and the action proceeds as a collective action during discovery." *Sedtal v. Genuine Parts Co.*, No. 1:08-cv-413-TH, 2009 WL 2216593, at *3 (E.D. Tex. July 23, 2009).

## ANALYSIS

Plaintiff claims that he and the potential plaintiffs are similarly situated for a variety of reasons, including: "[t]hey shared similar job duties and a similar pay structure while employed by the Defendant, [they] have worked at the same or similar locations, and [they] were paid on an hourly basis" (Dkt. #21 at p. 4). Plaintiff further requests this Court order Defendant to provide various information about potential opt-in plaintiffs. To facilitate the notice to these potential plaintiffs, Plaintiff provided the Court with both a proposed notice and a proposed consent form.

Defendant argues that multiple deficiencies exist within Plaintiff's motion. First, Defendant contends that Plaintiff failed to properly define the putative class. Next, Defendant states that Plaintiff failed to present sufficient evidence to warrant a nationwide collective action that includes all hourly employees. Defendant further argues that even if the class were to be limited to delivery drivers, Plaintiff has failed to show that delivery drivers in other stores were similarly situated to him. Defendant requests, if the Court conditionally certifies the action over objection, that the Court substantially modify Plaintiff's proposed distribution process, notice form, and consent form. In support of that request, Defendant claims that the detailed information

sought by Plaintiff about each potential collective member is overbroad and unnecessary. Defendant also contends that Plaintiff's request for four forms of notice is excessive and unjustified, and that Plaintiff's proposed notice inaccurately describes both the collective and the lawsuit.

## I. Putative Class Definition

Plaintiff defines the class as "[a]ll hourly paid employees currently or formerly employed by Defendant from three years prior to the date of Court's Order granting Notice, who were not paid federal minimum wage due to unreimbursed business expenses" (Dkt. #21 at p. 2).

Defendant contends that Plaintiff's definition is both conceptually and practically unworkable. Defendant states that conceptually, "this definition would require [Defendant] to concede the ultimate issue in the case as to each individual for whom it provided data: that the individual had in fact not been paid federal minimum wage due to unreimbursed business expenses" (Dkt. #22 at p. 6). Defendant further claims that the definition is unworkable as a practical matter because Defendant would have to "perform . . . labor-intensive data-gathering and mathematical calculation[s] just to define those who are entitled to receive notice" (Dkt. #22 at p. 7). According to Defendant, it has no knowledge of which employees claimed to have unreimbursed business expenses. Defendant arguably would also not know what expenses those employees claimed to have, among other logistical difficulties.

In its reply, Plaintiff narrows the definition by stating that "[he] seeks to conditionally certify a class of hourly paid delivery drivers who used their own vehicles to make deliveries on behalf of Defendant" (Dkt. #26 at p. 5). The Court finds Plaintiff's narrower definition acceptable at this stage of the *Lusardi* analysis and modifies it as such. *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) (noting that "[a] court . . . 'has the power to modify an

4

FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees'" (quoting *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008))).[1] The Court continues its analysis with the modified definition.

## II. Similarly Situated Plaintiffs

Under the first stage of *Lusardi*, "[P]laintiff bears the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists." *Tice*, 826 F. Supp. 2d at 995 (citing *Mims v. Carrier Corp.*, No. 2:06-cv-206, 2008 WL 906335, at *3 (E.D. Tex. March 31, 2008)). To carry this burden, "a plaintiff need only show that [its] position[] [is] similar to the potential plaintiffs, not identical." *Allen*, 2006 WL 3246531, at *2. Specifically, "the court should satisfy itself that the potential plaintiffs are similarly situated with respect to their job requirements and pay provisions." *Id.*

The Court notes that the first step under *Lusardi* "usually occurs early in the case" and therefore the determination of conditional certification "is made using a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were victims of a single decision, policy or plan." *Tice*, 826 F. Supp. 2d at 995 (citing *Mooney*, 54 F.3d at 1214). However, the preliminary factual showing must still "be based on competent evidence in order to avoid allowing unwarranted litigation." *Id.* (citing *Mims*, 2008 WL 906335 at *3). At a minimum, "the preliminary factual showing must be based on a personal knowledge of the facts." *Id.* (collecting cases).

---

[1] On the face of Plaintiffs original definition, the class did not include only those similarly situated—rather, it included "all hourly paid employees." This definition necessarily included those employees in non-delivery roles in which reimbursement does not occur.

Plaintiff asserts that he and the potential plaintiffs are similarly situated because they shared similar job duties. Additionally, both Plaintiff and the potential plaintiffs were subject to a similar pay structure while employed by Defendant. Each employee falling under the modified class definition were paid on an hourly basis and worked at the same or similar locations.

Defendant argues that even if the class were limited to delivery drivers—which the Court has done—Plaintiff has failed to show that delivery drivers in other stores were similarly situated to him. Defendant claims that Plaintiff's offered declarations from three former employees arise from a single restaurant, and none of those former employees worked at any other location. Defendant specifically contends that "[n]one of the evidence proffered in the declarations shows that the declarants have any basis for personal knowledge beyond the single restaurant in Irving, Texas at which they worked" (Dkt. #22 at p. 9). According to Defendant, Plaintiff's "limited offer of proof" is therefore "insufficient to show the existence of a single corporate policy or practice that has been uniformly applied to the nationwide collective of hourly employees that Plaintiff seeks to have certified" (Dkt. #22 at p. 9).

"[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." *Tice*, 826 F. Supp. 2d at 996 (citing *Allen*, 2006 WL 3246531 at *3). Here, Plaintiff has sufficiently demonstrated that delivery drivers performed the same basic tasks and were subject to the same pay practices through the Complaint, Plaintiff's own declaration, and the declaration of two other employees. Plaintiff and other hourly-paid delivery drivers using their own vehicles were employed by Defendant doing the same task— delivering meals ordered by customers. According to all three declarations, Defendant's reimbursement policy did not fully compensate various automobile expenses. Plaintiff additionally notes that four other former employees have opted to participate in the lawsuit—two

of whom reside outside the state of Texas. The declarations submitted also show that "there are other drivers who were paid the same way [the Plaintiffs] were, and those individuals would join the lawsuit if they knew about it" (Dkt. #21 at p. 6). Though the evidence is not overly abundant, the Court is satisfied that Plaintiff has demonstrated the existence of similarly situated potential plaintiffs. *See Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 653 (S.D. Tex. 2010) (noting that two declarations, excluding Plaintiff's, and a Complaint "that sufficiently states a claim against Defendant as to current and former employees who were allegedly denied overtime pay for excess hours" was sufficient to "demonstrate the existence of other similarly situated employees who wish to opt in to the lawsuit").

## III. Notice and Conditional Certification

"Court-authorized notice may counter the potential for misuse of the class device, avoids a multiplicity of duplicative suits, and sets reasonable cutoff dates to expedite the action's disposition." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 166 (1989). "Moreover, by monitoring preparation and distribution of the notice, a court can ensure that the notice is timely, accurate, and informative, and can settle disputes about the notice's content before it is distributed." *Id.*

### a. Detailed Information

Plaintiff seeks the name of each current and former potential plaintiff employed by Defendant for up to three years prior to the date of the Court's Order granting notice. Plaintiff also requests Defendant disclose the last known address, telephone number, date of birth, and email address for each potential plaintiff.

Defendant claims that Plaintiff's request is overbroad and unnecessary. Further, Defendant asserts that Plaintiff should be limited to the names and addresses of potential plaintiffs because the additional information sought is not necessary to effectuate proper notice.

Because "the purpose of notice is to inform potential class members of the lawsuit and provide them the opportunity to join the case," Defendant cannot reasonably object to Plaintiff's request for the potential plaintiff's names and addresses.[2] The other information—including telephone numbers, dates of birth, and email addresses—however, is subject to reasonable objection.

Courts have held that "distribution via email is appropriate." *See Wingo v. Martin Transp., Inc.*, No. 2:18-cv-00141-JRG, 2020 WL 6334312, at *9 (E.D. Tex. Dec. 5, 2018) (explaining the state of ever-changing technology and the growing reliance on email as a source of communication); *see also Reyes v. Bona 1372, Inc.*, No. 1:17-cv-16, 2017 WL 5148367, at *9 (E.D. Tex. Oct. 17, 2017). This Court agrees—email has become a necessary and routine means of communication. Thus, it necessarily follows that it is appropriate for Plaintiffs to obtain the last known email address for those employees who fall within the collective action definition.

The propriety of notice via text message is less clear.[3] District courts within the Fifth Circuit have not come to an absolute resolution; however, most courts do allow for notice via text message. *See Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 671 (S.D. Tex. 2020) (noting the district court split and collecting cases in support of and against the allowance of text message notice). The Court agrees that under the circumstances of this case, and the current state of technology, text message notification is a proper means of effectuating notice to the potential

---

[2] Defendant does not appear to contest disclosing names and addresses except to the extent it believes notice in its entirety is inappropriate.
[3] The Court can only assume that Plaintiff seeks telephone numbers to give notice via text message—Plaintiff merely states "electronically."

8

plaintiffs. Thus, it is appropriate for Plaintiffs to obtain the last known phone numbers of former and present employees falling within the class definition.

The Court does not, however, see how the dates of birth of the potential plaintiffs holds any relevance to notice. Plaintiff has not offered any explanation as to the necessity of the dates of birth, and the Court cannot find one. The request for the dates of birth of potential plaintiffs is therefore overbroad and unnecessary, and Defendant will not be required at this time to produce that information.[4] *See Flowers v. MGTI, LLC*, No. , 2012 WL 1941755, at *5 (S.D. Tex. May 29, 2012) (noting that plaintiffs' request for social security numbers and dates of birth were "broad and unsupported by the current record").

### b. Distribution Process

Plaintiff requests three forms of notice: (1) notice via First-Class Mail, and electronically;[5] (2) a Facebook page created by Plaintiff, with the Court's permission, to provide information for potential plaintiffs; and (3) a required posting by Defendant of the notice in a conspicuous place that is regularly visited by employees of Defendant.

Defendant contends that the Court should limit Plaintiff to notifying potential opt-ins via First-Class Mail. Defendant argues that any other form of additional notice is "not necessary or practical in this case" (Dkt. #22 at p. 12).

The Parties appear to agree that First-Class Mail is an acceptable form of notice. Further, the Court has previously analyzed the propriety of electronic service and determined that, in this

---

[4] Though Plaintiff offers no explanation, Defendant asserts that undeliverable notice is the motivation behind the dates of birth request. However, prospective worry does not suffice to require disclosure of this information. Rather, if a necessity arises, Plaintiff may request a court order requiring disclosure of the individuals' dates of birth whose notice returns undeliverable at that time in the future.
[5] Defendant divides Plaintiff's first request into two: (1) notice via First Class Mail and (2) notice electronically.

case, it is appropriate as well. Thus, the Court will only address Plaintiff's second and third requests: the Facebook page and posted notice at Defendant's restaurants.

The Court agrees with Defendant that a Facebook page is problematic. In Plaintiff's reply, he appears to abandon the request for a Facebook page, and he instead focuses on mail, email, and a physical posting at Defendant's restaurants.

The Court also agrees with Defendant that notice posted at all of Defendant's restaurants would add minimal value to the advancement of the case. Plaintiff offers no insight as to why posting is an appropriate form of notice beyond calling upon "the unique circumstances of the job performed by the Putative Class Members" (Dkt. #26 at p. 8). However, the three forms of notice already authorized by the Court—First-Class Mail, email, and text message—account for most, if not all, of the unique circumstances of the job. As noted by Defendant, "posting notice in [its] restaurants would only be a redundant form of notice for current employees, rather than reaching any additional potential opt-ins" (Dkt. #22 at p. 13). This claim rings especially true when considering that Plaintiff requests the notice be posted in a place frequently visited by current employees with no mention of the availability to former employees. The notice would therefore only reach the employees for which Defendant has the most updated contact information. Because the Court has authorized three independent forms of notice—all which specifically target an individual rather than an unrestricted group—the posting of notice in all of Defendant's restaurants is inappropriate. Thus, the Court declines to authorize this type of notice. Plaintiff may therefore only contact potential plaintiffs via First-Class Mail, email, and text message.

### c. Notice Form

Potential plaintiffs must receive "timely notice concerning the pendency of the collective action[] so that they can make informed decisions about whether the participate." *Hoffmann-La*

*Roche Inc.*, 493 U.S. at 170. Further, the Court must ensure that the notice is "timely, accurate, and informative." *Id.* at 171.

Plaintiff submitted a proposed notice form to the Court. The form included six headings: (1) You May Be Entitled To Unpaid Wages; (2) What's This All About; (3) How Do I Participate in This Case; (4) Can I be Retaliated Against; (5) What Are My Choices; and (6) How Can I Get More Information. Plaintiff has included approximately a paragraph under each heading answering the questions posed.

Defendant lodges several complaints against Plaintiff's proposed notice form. First, Defendant states that the proposed notice form fails to consistently define the putative class and does not adequately inform recipients of Defendant's position. Next, Defendant argues that notice should be distributed, if at all, to individuals employed within three years of the Court's order. Lastly, Defendant argues that the proposed notice form fails to address the legal effect of filing a consent form.

### i. Definition of Putative Class

Plaintiff's proposed notice form does not accurately or consistently define the putative class. However, the Court has modified the definition of the collective action members to "hourly-paid delivery drivers who used their own vehicles to make deliveries on behalf of Defendant." Thus, Plaintiff must utilize this definition every time the putative class is described, both in the notice and consent forms—thereby alleviating the harm of inconsistent definitions claimed by Defendant.

### ii. Adequate Information Concerning Defendant's Position

Plaintiff's proposed notice form does not indicate that Defendant contests its liability in this lawsuit. However, Defendant has cited no authority for the assertion that its position must be

blatantly stated in the notice form. The Court finds that multiple statements exist within the proposed notice that inform the potential plaintiffs that Defendant has not conceded liability. For instance, the proposed notice states that "[a] former delivery driver has filed a lawsuit claiming the [Defendant] failed to pay minimum wages as required by federal law" (Dkt. #21, Exhibit 1 at p. 1). The next sentence, in bold and underlined, states that "[t]he Court has not yet made a decision on the merits of the case" (Dkt. #21, Exhibit 1 at p. 1). Further, the proposed notice includes words such as "alleges" and "claims" when discussing the lawsuit. The proposed notice also states that "[i]f the lawsuit is successful, those participating may get an amount up to two times the unpaid wages they should have received" and "[i]f the plaintiffs[] lose, they will get nothing" (Dkt. #21, Exhibit 1 at p. 1) (emphasis omitted). Finally, the proposed notice informs the potential plaintiffs that they will be bound by the judgment in the case if they choose to participate, whether that outcome is favorable or unfavorable.

Although Plaintiff's proposed notice form does not outwardly state that Defendant contests its liability, the form does adequately inform recipients of Defendant's position. If Defendant agreed that it violated the law, no live suit would exist, and potential plaintiffs would not need information on how to participate in the litigation. The language in the proposed notice makes clear the fact that Defendant does not agree with Plaintiff's position.

### iii. Three-Year Distribution

Defendant next advances an argument regarding the statute-of-limitations and its effect on which potential plaintiffs should receive notice. While the FLSA generally carries a two-year statute of limitations, if a plaintiff alleges a willful violation of the statute, the limitations period extends to three years. 29 U.S.C. § 225(a); *see Mohammadi v. Nwabuisi*, 605 F.App'x 329, 332 (5th Cir. 2015). Plaintiff in the present case alleges that Defendant's reimbursement scheme

unlawfully underpaid employees—a willful violation. Thus, the three-year statute of limitations applies.

The Court agrees with Defendant that the notice should only be given to those potential plaintiffs whose cause of action falls within the three-year statute-of-limitations. Because "[t]he limitations period is not tolled as to individual claimants until the claimant files a written opt-in consent form with the court," 29 U.S.C. § 256(b), the only potential plaintiffs with arguably viable claims are those who were subjected to the alleged scheme within three years from the Court's order conditionally certifying the class and authorizing the issuance of notice.

### iv. Legal Effect of Filing Consent Form

Finally, Defendant argues that the proposed notice form fails to provide a detailed statement of the legal effect of filing a consent form. Defendant claims that "the notice does not advise the potential opt-ins of their obligations should they decide to join the lawsuit" (Dkt. #22 at p. 15).

The Court agrees that the notice form should include information about possible discovery obligations. However, the inclusion must be tempered to reflect the realistic nature of discovery—namely, that the obligations *might* arise. As noted by Plaintiff, discovery is not unlimited and reasonable restrictions do exist. Despite those restrictions, potential plaintiffs should receive notice of discovery obligations in which they might be required to participate before those obligations come to fruition. Plaintiff shall therefore include a statement concerning the discovery obligations that may arise throughout the litigation.[6]

### d. Consent Form

---

[6] Plaintiff argues that discovery language has a "chilling effect" on participation. However, discovery obligations may, in fact, arise.

Lastly, Defendant challenges Plaintiff's proposed consent form because it allegedly fails to correctly identify the nature of the lawsuit. Specifically, Defendant notes that the claim alleged in the consent form concerns unpaid overtime.

The Court agrees that the consent form is inaccurate and should be modified to correctly state the nature of the dispute—namely, the recovery of FLSA-mandated minimum wages owed to non-exempt, hourly-paid employees.

The Court acknowledges that certification at the notice stage is "by no means mandatory." *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 759 (N.D. Tex. 2013). However, Plaintiff has shown that "it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *De La Rosa*, 2019 WL 7067130 at *3 (first quoting *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 916–17 (S.D. Tex. 2010), and then citing *Townsend v. Central Pony Express, Inc.*, No. SA-17-cv-00663-OLG, 2018 WL 2432962, at *3 (W.D. Tex. Jan. 26, 2018)); *Jaso Bulldog Connection Specialists LLC,* No. 2:15-cv-269, 2015 WL 11144603, at *5 (S.D. Tex. Oct. 15, 2015)). The Court is satisfied that Plaintiff has met its burden under the first stage of *Lusardi*. However, the proposed notice and consent forms are deficient, and the Court will not issue notice until those deficiencies are cured in accordance with this Opinion. If, after discovery, Defendant can show that the Plaintiffs were not, in fact, similarly situated, "it will have the opportunity at stage two of *Lusardi* to move to 'decertify' the collective action." *Id.* at *2.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Notice to Potential Plaintiffs and for Conditional Certification (Dkt. #21) is hereby **GRANTED in part** and **DENIED in part**.

Defendant is **ORDERED** to produce, in a usable electronic format, the names, last known addresses, email addresses, and telephone numbers of potential plaintiffs falling within the class definition within fourteen days of the date of this Order.

Plaintiff is further **ORDERED** to prepare amended notice and consent forms consistent with this Order.  Plaintiff shall submit such forms to the Court by January 22, 2021.

**IT IS SO ORDERED**.

SIGNED this 8th day of January, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE