# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| MOHAMED HISHAM ELTAYEB, individually and on behalf of all others similarly situated,<br><br> *Plaintiff*,<br><br>v.<br><br>DELI MANAGEMENT, INC. d/b/a "JASON'S DELI",<br><br> *Defendant*. | § § § § § § § § § § § § § <br><br>Civil Action No.  4:20-CV-00385<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Renewed Motion for Notice to Potential Plaintiffs (Dkt. #46). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's motion should be **DENIED**.

### BACKGROUND

This case arises from the employment relationship between Defendant Deli Management, Inc., doing business as Jason's Deli, ("Jason's Deli") and its delivery drivers. Jason's Deli operates multiple restaurants and employs drivers to deliver food items to customers. Drivers make deliveries using their own vehicles. Jason's Deli then reimburses delivery drivers pursuant to a method outlined in its policies. Through this policy, Jason's Deli instructs managers to maintain a spreadsheet to track drivers' mileage, number of deliveries, payouts per delivery, and total payouts (*see* Dkt. #46-11). The spreadsheet is designed to ensure all payouts meet the IRS guidelines.

Plaintiff Mohamed Hisham Eltayeb ("Eltayeb") brought this suit under the Fair Labor Standards Act ("FLSA") to recover unpaid minimum wages from when he worked as a delivery

driver at Jason's Deli. Two additional plaintiffs ("Opt-ins") have since joined the suit. Eltayeb first claims that Jason's Deli uses a flawed method to determine reimbursement rates. As a result of this method, the drivers' unreimbursed expenses allegedly caused their wages to fall below the federal minimum wage during some or all workweeks.

On January 8, 2021, the Court entered a Memorandum Opinion and Order granting in part and denying in part Eltayeb's Motion for Notice to Potential Plaintiffs and for Conditional Certification (Dkt. #29). In this opinion, the Court found that Eltayeb had met his burden of showing the potential plaintiffs within the proposed collective were likely similarly situated and could thus receive notice of the suit. Days later, the Fifth Circuit's decision in *Swales v. KLLM Transportation Services, L.L.C.* altered the standard by which district courts determine whether potential plaintiffs may be notified of a collective action. 985 F.3d 430 (5th Cir. 2021). Following this change in the law, Jason's Deli's filed a Motion for Reconsideration of the Court's Order Granting Class Notice (Dkt. #30). The Court granted the Motion for Reconsideration on March 19, 2021 (Dkt. #35).

On June 17, 2021, Eltayeb filed the present renewed motion seeking notice to potential plaintiffs in this collective action (Dkt. #46). On July 12, 2021, Jason's Deli filed a response (Dkt. #51). On July 26, 2021, Eltayeb filed a reply (Dkt. #54). On August 9, 2021, Jason's Deli filed a sur-reply (Dkt. #56). To date, the parties have provided the Court with limited discovery, including depositions of Eltayeb, Opt-ins, and several current and former managers of Jason's Deli restaurants across the country (the "Representative Locations").

**LEGAL STANDARD**

The FLSA requires covered employers to pay non-exempt employees a minimum wage, which is currently $7.25 an hour. 29 U.S.C. § 206(a). Section 216(b) imposes liability on

employers for violations of § 206 and authorizes employees to bring an action for an employer's failure to pay the minimum wage. Employees may bring an FLSA minimum wage action individually or as a collective action on behalf of themselves and other "similarly situated" employees 29 U.S.C. § 216(b). However, neither § 216(b) nor Fifth Circuit precedent defines "similarly situated"—thus leaving exactly who may be included in such an action an issue for the district court to decide. *See id.*

In contrast to a class action under Federal Rule of Civil Procedure 23, which generally requires potential plaintiffs to opt-out if they do not wish to be represented in the lawsuit, a collective action under § 216(b) requires potential plaintiffs to affirmatively opt into the lawsuit. *Swales*, 985 F.3d at 435. "Under § 216(b), district courts have the discretionary power to conditionally certify collective actions and authorize notice to potential class members." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011).

Historically, courts in the Fifth Circuit have conditionally certified a collective by adhering to a two-step approach outlined in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987). Under the first stage of *Lusardi*, the plaintiff "bears the burden of presenting preliminary facts showing that a similarly situated group of potential plaintiffs exists." *Tice*, 826 F. Supp. 2d at 995 (citing *Mims v. Carrier Corp.*, No. 2:06-cv-206, 2008 WL 906335, at *3 (E.D. Tex. March 31, 2008)). To carry this burden, "a plaintiff need only show that [its] position[] [is] similar to the potential plaintiffs, not identical." *Allen v. McWane, Inc.*, No. 2:06-cv-158 (TJW), 2006 WL 3246531, at *2 (E.D. Tex. Nov. 7, 2006). The court is instructed "satisfy itself that the potential plaintiffs are similarly situated with respect to their job requirements and pay provisions." *Id.*

The first step under *Lusardi* "usually occurs early in the case" and therefore the determination of conditional certification "is made using a fairly lenient standard requiring nothing

more than substantial allegations that the putative class members were victims of a single decision, policy or plan." *Tice*, 826 F. Supp. 2d at 995 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). Stage two of *Lusardi* takes place after discovery. If, after discovery, a defendant can show the plaintiffs are not, in fact, similarly situated, it has the opportunity to move to "decertify" the collective action. *Lusardi*, 118 F.R.D. 351.

In *Swales*, the Fifth Circuit rejected the traditional two-step *Lusardi* approach to collective action certification and created a more stringent process. 985 F.3d at 441. In contrast to the flexibility offered by *Lusardi*, the Fifth Circuit in *Swales* directs district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Swales*, 985 F.3d at 441. After identifying the relevant material facts and legal considerations, the district court "should authorize preliminary discovery accordingly." *Id*.

In determining whether notice should be provided to those employees "similarly situated," the district court must ultimately decide whether "merits questions can be answered collectively." *Id.* at 442. This requires a court to consider "all of the available evidence to determine whether notice is going out to the putative class members," and the determination must be made as early as possible in the span of litigation. *Id*. at 441–42. Given this fact-intensive approach, the conclusion will vary case-by-case. *Id.* at 441.

Notice to potential plaintiffs is proper if the available evidence establishes that the plaintiff has met the "similarly situated" threshold. *See id.* at 443. The plaintiff may meet this threshold at varying stages of discovery; for instance, "notice might be justified when the pleadings and only preliminary discovery show sufficient similarity between the plaintiffs' employment situations." *Id*. at 441. Other times, if an employee seeks to certify a class where "plaintiffs have demonstrably

4

different work experiences," a district court might "need more discovery to determine whether notice is going out to those 'similarly situated.'" *Id*. at 442. In the latter situation, a district court may: (1) "conclude that the Plaintiffs and Opt-ins are too diverse a group" to support a collective action; (2) "decide that [the court] needs further discovery to make [a] determination"; or (3) "find that only certain subcategories of" employees "should receive notice." *Id*. at 443. In any case, to prevent the collective action from "quickly devolv[ing] into a cacophony of individual actions," *Swales* instructs the district court that potential plaintiffs are not similarly situated if answering a threshold merits questions requires a "highly individualized inquiry into each potential opt-in's circumstances." *Id.* at 442.

Under this newly articulated standard, "*Lusardi* and its requirements are dead and gone." *Collins v. Pel-State Bulk Plant, LLC*, No. MO20CV00083, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021). "The bottom line is that the district court has broad, litigation-management discretion" when determining whether to "certify" a collective action. *Id.*

## ANALYSIS

In reconsidering whether notice of the collective action is appropriate here, the Court must "rigorously scrutinize the realm of 'similarly situated' workers" by identifying "what facts and legal considerations will be material" for determining liability. *Swales*, 985 F.3d at 434, 441; *see also Powell v. One Source EHS, L.L.C.*, No. CV 20-161, 2021 WL 4227064, at *4 (M.D. La. Sept. 16, 2021) ("At this stage, the focus is on whether the merits of the proposed collective's case can be decided collectively.").

The FLSA requires that Jason's Deli pay its delivery drivers a minimum wage of $7.25 an hour. 29 U.S.C. § 206(a). Defendant does not dispute this requirement. However, as previously discussed, Jason's Deli does not only pay its delivery drivers an hourly wage. The nature of the

delivery job requires a more complex pay structure. Using a spreadsheet, managers track miles driven as well as the number of deliveries completed and make payouts based on what the spreadsheet indicates. Therefore, to determine whether Jason's Deli is liable to each potential plaintiff, the Court would have to use an equation to compute which delivery drivers made, on average, less than $7.25 per hour during their employment with Jason's Deli. This would require the Court to consider several different variables for each potential plaintiff. The Court finds this computation would result in the type of "highly individualized inquiry" *Swales* warns against. *See also Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003, at *1 (N.D. Miss. May 25, 2021) ("If the proposed members of the class are not sufficiently similarly situated, meaning that the Court would be required to conduct 'a highly individualized inquiry into each potential plaintiff's circumstances' in order to determine liability, the plaintiff's motion to certify the class should be denied.").

**I.  Proposed Collective**

Eltayeb seeks a nationwide notice sent to a proposed a collective of "hourly-paid delivery drivers who used their own vehicles to make deliveries on behalf of [Jason's Deli]" (Dkt. #29 at p. 11). Eltayeb argues that granting notice to these potential plaintiffs is still appropriate under *Swales* because "[a]lthough the *Swales* decision modifies the procedural posture of FLSA cases, it does not change the similarly situated standard" (Dkt. #33 at p. 2).

Eltayeb claims that he and the potential plaintiffs are similarly situated for a variety of reasons, including: "[t]hey shared similar job duties and a similar pay structure while employed by the Defendant, [they] have worked at the same or similar locations, and [they] were paid on an hourly basis" (Dkt. #46 at p. 7). Specifically, Eltayeb and the Opt-ins testify "that there are other drivers who were paid the same . . . and those individuals would join the lawsuit if they knew about

it" (Dkt. #46 at p. 9). They further testify that the drivers at each location are subject to the same policies, practices, and procedures.

Jason's Deli argues that Eltayeb has failed to show delivery drivers in other stores were similarly situated to him. Jason's Deli claims the declarations from Eltayeb and the Opt-ins arise from a single restaurant, and none of those former employees worked at any other location. Jason's Deli contends that Eltayeb's motion lacks "an explanation of how proceeding as a collective action would allow the Court to resolve common issues of fact or law on a class-wide basis to determine liability" (Dkt. #51 at p. 9). According to Jason's Deli, "[t]here are simply too many differences among the stores in this matter to be able to justify relying on Eltayeb's experiences to be truly representative of all other drivers" (Dkt. #51 at p. 9). Jason's Deli specifically notes the variations in "how much delivery drivers were paid per hour; how they were assigned deliveries; how multiple deliveries were clustered per run; and how delivery drivers received additional payouts" (Dkt. 51 at p. 11).

While Eltayeb has demonstrated that delivery drivers performed the same basic tasks and were subject to the same pay practices, *Swales* demands more. Eltayeb has the burden of showing potential plaintiffs are so similarly situated that the Court will avoid a "highly individualized inquiry into each potential opt-in's circumstances." *Swales*, 985 F.3d at 442. Otherwise, "the collective action would quickly devolve into a cacophony of individual actions." *Id.*

As mentioned, to determine whether Jason's Deli is liable to each potential plaintiff, the Court would have to rely on an equation to compute which delivery drivers made, on average, less than $7.25 per hour while employed by Jason's Deli. Eltayeb asserts that liability "boils down to a simple equation with only three inputs":

**Wage Rate + Vehicle Reimbursements - Vehicle Costs**

(Dkt. #54 at p. 4). However, the limited discovery demonstrates that the equation is not so simple. Even the equation offered by Defendants does not fully present the varying factors at play in determining liability:

$$(\text{Wage Payments}^1 + \text{Delivery Fees}^2 + \text{Additional Payouts}^3) - \text{Business Related Automobile Expenses}^4$$

Rather, "[t]he discovery conducted to date shows that there is wide variation among the drivers with respect to virtually all of the key inputs into the liability formula" (Dkt. #51 at p. 11).

### A. Wage Payments and Delivery Fees

First, the wage payments vary significantly across the country; the lowest known rate is $7.25 and the highest known is $17 per hour. Second, delivery fees vary by location and by the number of deliveries made per hour. Eltayeb testifies that he regularly made two or more deliveries per hour and was compensated $1 per delivery (Dkt. #46-4 ¶ 4). He averaged a round trip of eight or more miles (Dkt. #46-4 ¶ 4). But as the limited discovery demonstrates, Jason's Deli paid drivers in other areas $2 per delivery, and the varying distances for each delivery were correlative to the surrounding area. For example, "the average delivery took place within a two-mile radius" of a Jason's Deli in Chicago, Illinois and "90% of deliveries took place within a three-mile radius" of a Jason's Deli in Dallas, Texas (Dkt. #51 at p. 13). The discovery indicates that the average distances in these large cities were notably shorter than those in suburban areas like Irving, Texas, where Eltayeb and Opt-ins worked.

---

[1] Wage payments refer to the hourly wages delivery drivers received.
[2] Jason's Deli paid its drivers a particular dollar amount for each delivery completed, but the amount differed by location.
[3] As discussed *infra*, Jason's Deli made additional payouts to certain drivers, but these payouts were not uniform across all restaurant locations.
[4] Business related automobile expenses refer to gasoline expended on delivery routes, maintenance costs, etc.

### B. Additional Payouts

Further, the limited discovery shows additional payouts were not constant, as these were left to the discretion of management at each location. "Additional payouts at the Representative Locations ranged from $56 to $0.50" (Dkt. #61 at p. 15). Some managers structured payment of additional wages upon exact miles driven while others considered a number of more discretionary factors. The payments might have differed not only by location but also by which manager worked a particular shift.

### C. Business Related Automobile Expenses

The variance in automobile expenses is even more drastic. As Jason's Deli notes, expenses differed depending "on the density of the area surrounding the restaurant, the make, model, and year of their vehicle, their maintenance and repair costs, and the number of miles driven in performing their duties" (Dkt. #51 at p. 16). The limited discovery reveals that "drivers drove different types of cars that varied in fuel efficiency and depreciation status, had different payment obligations" and "bought gas in areas with different gas prices" (Dkt. #51 at p. 16).[5] These factors create disparity in the business related automobile expenses for each potential plaintiff.

Such variances render the nationwide collective of potential plaintiffs dissimilarly situated. As mentioned, the FLSA requires that Jason's Deli pay its delivery drivers a minimum wage of $7.25 an hour. 29 U.S.C. § 206(a). The limited discovery demonstrates that any number of potential plaintiffs may have earned well above $7.25 per hour while working as drivers for Jason's Deli. Those that did earn net wages over the federal minimum cannot recover from Jason's Deli in this lawsuit. To decide who may recover, the Court would, at a minimum, need to categorize

---

[5] The Court notes that Jason's Deli overstates some of the projected litigation burdens—like determining plaintiffs' approaches to repair and maintenance, their exact routes, and "how they used their vehicles for other employment or personal uses when they were not working for Jason's Deli" (Dkt. #51 at p. 17). It is not apparent that such detail would be necessary in determining the net profit of the drivers.

9

plaintiffs based on their hourly wages, pay structures, and reimbursements. Such a "highly individualized inquiry" is unworkable and contrary to the Fifth Circuit's purpose in constructing the *Swales* framework. 985 F.3d at 442.[6] The Court, therefore, cannot authorize notice to the broad collective urged by Eltayeb.[7]

## II. Narrowed Collective

Eltayeb requests, in the alternative, that the Court issue notice to Jason's Deli's "delivery drivers who were paid at an hourly rate of $8.65 per hour or less" (Dkt. #54 at p. 9). Eltayeb argues that "limiting the scope of notice" in this manner "would accordingly cure [Jason's Deli's] strongest variation factor, the hourly rate paid to delivery drivers who work for [Jason's Deli] nationwide" (Dkt. #54 at p. 9). Jason's Deli responds that this narrowed proposed collective does not alleviate the highly individualized inquiries because "there is no such thing as common proof of liability on these facts" for any group of potential plaintiffs (Dkt. #56 at p. 3).

---

[6] The limited post-*Swales* case law supports this claim. *See, e.g.*, *Lopez-Gonzales v. Ramos*, No. 2:20-CV-061, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021) (denying notice to a proposed collective because plaintiffs "fail[ed] to offer persuasive evidence that the servers at *any other* Plaza Restaurant in Texas [were] similarly situated"); *Powell*, 2021 WL 4227064, at *2 ("the Fifth Circuit state[s] that the district court must consider all of the evidence before it to determine whether the proposed collective is similarly situated, even if that evidence also bears on an ultimate merits issue."); *Collins*, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021) (holding plaintiffs' proposed collective was geographically and temporarily overbroad because the plaintiffs had only worked at one location).

[7] To date, the Court is unaware of any FLSA collective action suit claiming minimum wage violations in which the court found the proposed collective was similarly situated—that is, of course, since the Fifth Circuit's *Swales* decision. *See, e.g.*, *Bennett v. McDermott Int'l Inc.*, No. 2:19-CV-00158, 2021 WL 4434204, at *3 (W.D. La. Sept. 27, 2021); *Hebert v. Technipfmc USA, Inc.*, No. 4:20-CV-2059, 2021 WL 1137256, at *5 (S.D. Tex. Feb. 5, 2021); *Aboin v. IZ Cash Inc.*, No. 4:20-CV-03188, 2021 WL 3616098, at *6 (S.D. Tex. June 29, 2021); *Richard v. Flowers Foods, Inc.*, No. CV 15-2557, 2021 WL 4887978, at *2 (W.D. La. Oct. 18, 2021); *Eng. v. Tex. Farm Bureau Cas. Ins. Co.*, No. 617CV00323, 2021 WL 2786668, at *3 (W.D. Tex. May 19, 2021). On the other hand, courts in this circuit have found the proposed collective was similarly situated in overtime wage cases. *See, e.g.*, *Young v. Energy Drilling Co.*, No. 4:20-CV-1716, 2021 WL 1550343, at *3 (S.D. Tex. Apr. 20, 2021); *Hernandez v. Pritchard Indus., LLC*, No. SA-20-CV-00508-XR, 2021 WL 1146005, at *2 (W.D. Tex. Mar. 25, 2021); *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246, 2021 WL 2187956, at *9–11 (W.D. Tex. May 28, 2021); *T.S. by & through P.O. v. Burke Found.*, 521 F. Supp. 3d 691, 697 (W.D. Tex. 2021); *Torres v. Chambers Protective Services, Inc., et al*, No. 5:20-CV-212-H, 2021 WL 3419705, at *5 (N.D. Tex. Aug. 5, 2021); *Loy v. Rehab Synergies, LLC*, No. 7:18-CV-00004, 2021 WL 3931926, at *12 (S.D. Tex. Sept. 2, 2021); *Dardar v. Pit Stop Eatery of Houma, LLC*, No. CV 20-1605, 2021 WL 5513417, at *5 (E.D. La. Mar. 30, 2021); *Collins v. Pel-State Bulk Plant, LLC*, No. MO20CV00083DCRCG, 2021 WL 5234968, at *4 (W.D. Tex. Sept. 29, 2021); *Soto v. Marquez Constr. & Maint., LLC*, No. MO20CV00101DCRCG, 2021 WL 3832836, at *2 (W.D. Tex. Apr. 9, 2021).

Limiting the putative class would cure the strongest variation factor. As mentioned, delivery drivers made between $7.25 and $17 per hour, so those drivers earning wages on the higher end would be far less likely to fall below the minimum wage after expenses. However, even if the Court issued notice only to drivers who earned hourly wages of $8.65 or less, the other elements still vary across—and even within—Jason's Deli restaurants nationwide. Specifically, if the Court authorizes notice to those who earned $8.65 an hour, the Court must still conduct an individualized inquiry to determine which stores gave their drivers additional payouts, whether additional payouts differed between shifts, how far the average delivery trip was per driver, how many deliveries each driver made per hour, and what reimbursements each particular Jason's Deli restaurant paid for automobile expenses. These inquiries would be essential to computing whether Jason's Deli violated the FLSA by paying its drivers less than $7.25 per hour. Because these inquiries "bear[] on an ultimate merits issue," the Court cannot authorize notice at this juncture. *Powell*, 2021 WL 4227064, at *2.

However, the Court recognizes that any number of Jason's Deli drivers may have recovered a net profit of less than the $7.25 per hour that the FLSA requires, particularly those that earned hourly wages of $8.65 or less. And the primary purpose behind collective actions stems from "the need for 'efficient resolution in one proceeding of common issues.'" *In re JP Morgan Chase & Comp.*, 916 F.3d 494, 502 (5th Cir. 2019) (quoting *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989)). In this case, even if the parties "must pose an inquiry to each of the [] Plaintiffs, the Court does not see how doing so 'in one collective trial is any less difficult' than posing the same inquiry in separate trials." *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246, 2021 WL 2187956, at *9–11 (W.D. Tex. May 28, 2021) (quoting *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018)). If the vast majority of drivers who earned hourly

wages of $8.65 or less fell below the minimum wage after their work-related expenses, a collective action is the appropriate route. Any other route would either leave potential plaintiffs without a remedy for their underpaid wages or result in separate trials, thus defeating the efficiency that collective actions are intended to create.

It is immaterial that the Court would later have to determine the specific damages, if any, that Jason's Deli must award individual plaintiffs. *See id.* ("Variations in the quantity of time lost as uncompensated goes to damages, not liability. When plaintiffs' common issues predominate over individual damage calculations, class certification is proper, and the plaintiffs may proceed in a collective action." (internal quotations omitted)). That said, the Court at this point will not foreclose Eltayeb's ability to issue notices and proceed as a collective action without more detailed information. Accordingly, at this point, the Court authorizes additional discovery and, below, "dictate[s] the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs." *Swales*, 985 F.3d at 441 (holding that, after identifying the relevant material facts and legal considerations, the district court "should authorize preliminary discovery accordingly"). Specifically, the Court dictates this discovery to facilitate determining whether Jason's Deli drivers who earned $8.65 per hour or less are similarly situated in a manner that would allow the Court to collectively answer the ultimate question of liability.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Renewed Motion for Notice to Potential Plaintiffs (Dkt. #46) is hereby **DENIED.**

It is hereby **ORDERED** that the parties shall meet and confer regarding the discovery necessary for the Court to determining whether Jason's Deli drivers who earned $8.65 per hour or less are similarly situated in a manner that would allow the Court to collectively answer the ultimate question of liability.

It is further **ORDERED** that the parties shall submit a joint proposal outlining the agreed upon discovery plan no later than 10 business days from the date of this Order.

**IT IS SO ORDERED.**

**SIGNED this 14th day of December, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE